1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARCELL JONES,

11            Plaintiff,                    No. 2:10-cv-0396 JAM JFM (PC)

12      vs.

13   JOHN DOE, Warden, et al.,

14            Defendants.              FINDINGS & RECOMMENDATIONS

15   _____/

16            Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  This action is proceeding on claims raised in plaintiff's original complaint,

18   filed February 16, 2010, arising from two separate incidents at High Desert State Prison in

19   Susanville, California (High Desert).  Plaintiff claims that defendant Correctional Officer K.

20   Barron violated his constitutional rights through an inappropriate search of plaintiff and use of

21   excessive force resulting in plaintiff suffering a broken wrist, and that defendants L.V.N. C.

22   Bryant and R.N. J. Flaherty violated his constitutional rights by acting with deliberate

23   indifference to his need for adequate treatment of the broken wrist.  Plaintiff also claims that

24   defendant Bryant violated plaintiff's constitutional rights by acting with deliberate indifference to

25   his need for adequate treatment of a back injury that he suffered on March 24, 2008.  This matter

26   is before the court on defendants' motion for summary judgment.

1  SUMMARY JUDGMENT STANDARDS UNDER RULE 56

2            Summary judgment is appropriate when it is demonstrated that there exists "no

3  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

4  matter of law."  Fed. R. Civ. P. 56(c).

5            Under summary judgment practice, the moving party

6       always bears the initial responsibility of informing the district court
   of the basis for its motion, and identifying those portions of "the
7       pleadings, depositions, answers to interrogatories, and admissions
   on file, together with the affidavits, if any," which it believes
8       demonstrate the absence of a genuine issue of material fact.

9  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

10 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

11 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

12 to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

13 after adequate time for discovery and upon motion, against a party who fails to make a showing

14 sufficient to establish the existence of an element essential to that party's case, and on which that

15 party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

16 concerning an essential element of the nonmoving party's case necessarily renders all other facts

17 immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

18 whatever is before the district court demonstrates that the standard for entry of summary

19 judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

20           If the moving party meets its initial responsibility, the burden then shifts to the

21 opposing party to establish that a genuine issue as to any material fact actually does exist.  See

22 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

23 establish the existence of this factual dispute, the opposing party may not rely upon the

24 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

25 form of affidavits, and/or admissible discovery material, in support of its contention that the

26 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/////

1     On June 18, 2010, the court advised plaintiff of the requirements for opposing a

2 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3 F.3d 952, 957 (9th Cir. 1998) (en banc),  cert. denied, 527 U.S. 1035 (1999), and Klingele v.

4 Eikenberry, 849 F.2d 409 (9th Cir. 1988).

5                                      ANALYSIS

6 I.  Claims Arising on February 5, 2008

7          A.  Facts

8     Plaintiff's first three claims arise from a clothed body search conducted February

9 5, 2008 on plaintiff by defendant Barron while plaintiff was returning to his housing unit from

10 afternoon yard at High Desert.  The parties dispute the circumstances of the search.

11     In support of the motion for summary judgment, defendant Barron avers that at

12 approximately 3:15 p.m. on the afternoon of February 5, 2008, he and three other correctional

13 officers were conducting clothed body searches on inmates returning from afternoon yard.

14 Declaration of K. Barron, filed March 9, 2011, at ¶ 4.  Plaintiff stepped in front of him to be

15 searched.  Id. at ¶ 6.  As defendant Barron started to search plaintiff's upper torso shoulder areas,

16 plaintiff stepped away, turned to face defendant Barron "and said 'Don't get too close.'"  Id. at ¶

17 7.  Defendant Barron told plaintiff that Barron was not too close and ordered plaintiff to turn

18 around to be searched.  Id. at ¶ 8.  Plaintiff complied with the order and defendant Barron

19 continued the search.  Id at ¶¶ 9-10.  As defendant Barron moved his hands down plaintiff's arms

20 toward plaintiff's hands, plaintiff again pulled away and said "'I'm not doing this.'"  Id. at ¶ 12.

21 Defendant Barron held plaintiff's right hand with his right hand, stepped to plaintiff's right side,

22 placed his left hand on plaintiff's right elbow, and ordered plaintiff to get down.  Id. at § 13.

23 Plaintiff did not resist and moved to a seated position.  Id. at ¶ 14.  Defendant Barron ordered

24 plaintiff to get into a prone position, which plaintiff did.  Id. at ¶ 15.  Defendant Barron put

25 plaintiff in handcuffs and completed the clothed body search.  Id. at ¶ 16.  Two other correctional

26 officers then helped plaintiff stand up and escorted him back to his housing unit.  Id. at ¶ 17.

1   Defendant Barron avers that plaintiff never complained of pain or injury to his left wrist, and that

2   he is certain that he grabbed plaintiff's right arm and wrist with only the minimum amount of

3   force necessary to obtain plaintiff's compliance with the clothed body search.  Id.

4          Plaintiff was examined by defendant Bryant at 3:35 p.m.  Declaration of C.

5   Bryant, filed March 9, 2011 (Bryant Decl.), at ¶ 3.  Plaintiff told defendant Bryant "that he had

6   been sexually violated and that his wrist hurt when he bent it."  Id. at ¶ 4.  Defendant Bryant

7   "found an abrasion or scratch  to plaintiff's right elbow" and noted that plaintiff only complained

8   of pain in his right wrist.  Id. at ¶ 5-7.  Defendant Bryant did not observe any injury to plaintiff's

9   left wrist.  Id. at ¶ 8.  Defendant Bryant notified defendant Flaherty of plaintiff's injury report and

10  plaintiff was medically cleared at 3:45 p.m.  Id. at ¶ 9.

11         Plaintiff's version of the search is set forth in his complaint, filed February 16,

12  2010.[1]  Plaintiff avers that on February 5, 2008, he went to defendant Barron for a clothed body

13  search.  Complaint, filed February 16, 2010, at 5.  Defendant Barron "pressed himself against

14  [plaintiff], from behind, in a sexually intrusive/inappropriate manner."  Id.  Plaintiff "moved

15  forward one to two steps and asked for appropriate spacing."  Id.  Defendant Barron ordered

16  plaintiff to return to the search position, and plaintiff complied with the order.  Id.  Defendant

17  Barron again pressed himself against plaintiff in an inappropriate manner.  Id.  Plaintiff felt

18  violated and again moved forward asking for space.  Id.  When plaintiff moved forward a second

19  time, defendant Barron grabbed plaintiff, yelled "get down", and forced plaintiff to the ground.

20  Id.  As plaintiff was going to the ground he "felt instant pain shoot through my left forearm, wrist

21  and hand."  Id.  "[M]oments later" plaintiff was seen by defendant Bryant and "questioned about

22  injuries."  Id.  Plaintiff told defendant Bryant he had severe pain in his left wrist.  Id.  Over the

23  next several days, plaintiff "complained of wrist pain, swelling and lack of wrist mobility."  Id.

24

25         [1] Plaintiff's complaint is signed under penalty of perjury and therefore serves as an
    opposing affidavit to the extent that the averments are based on plaintiff's "personal knowledge
26  of admissible evidence."  Schroder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995).

1   He submitted several medical slips to be seen by a doctor.  Id. at 5-6.  On February 8, 2008,

2   plaintiff was seen by defendant Flaherty, who characterized plaintiff's condition as "routine."  Id.

3   at 6.  Plaintiff wasn't seen again until February 22, 2008, when x-rays taken of his left wrist

4   revealed a left navucular fracture.  Id.  On March 5, 2008, plaintiff was seen at a Reno orthopedic

5   clinic, where surgery was recommended.  Id.  The surgery was performed on March 13, 2008 at

6   Northern Nevada Medical Center.  Id.  The surgery was successful but pain management

7   continued to be a problem.  Id. at 6-7.  Plaintiff had physical therapy several times and, on

8   discharge, told that his wrist mobility "would not get back to where" it was before the injury but

9   that the goal was "to get as close to before as possible."  Id. at 7.

10          B.  Plaintiff's Claims

11              1.  Improper Search

12          Plaintiff claims that defendant Barron violated his constitutional rights by

13   subjecting him to an improper clothed body search, specifically, by pressing himself against

14   plaintiff two times in a "sexually intrusive/inappropriate manner" during the search.  Defendant

15   Barron seeks summary judgment on this claim on the ground that his search of plaintiff was

16   "presumptively reasonable."  Memorandum of Points and Authorities in Support of Defendants'

17   Motion for Summary Judgment, filed March 9, 2011, at 3.  Plaintiff contends defendant Barron's

18   contact was "inappropriate" and subjected him to "sexual misconduct."  Opposition to Motion

19   for Summary Judgement, filed April 25, 2011, at 1,6.

20          Prison inmates retain some limited rights in bodily privacy under the Fourth

21   Amendment.  See Bell v. Wolfish, 441 U.S. 520, 558 (1979).  In the context of body searches,

22   the protection is limited to freedom from "unreasonable" searches.  Id.  "The test of

23   reasonableness under the Fourth Amendment is not capable of precise definition or mechanical

24   application.  In each case it requires a balancing of the need for the particular search against the

25   invasion of personal rights that the search entails."  Id. at 559.  It is well-established that "routine

26   pat-down searches, which include the groin area, and which are otherwise justified by security

1   needs" do not violate the U.S. Constitution.  Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir.

2   1985).

3          There is no dispute that the clothed body search conducted on plaintiff was

4   conducted for legitimate penological reasons.  Although there is a dispute about the nature of the

5   contact between defendant Barron and plaintiff that caused plaintiff to twice step away from

6   defendant Barron, viewed in the light most favorable to plaintiff the facts do not establish a

7   search so unreasonable that it violated plaintiff's Fourth Amendment rights.  Defendant Barron is

8   entitled to summary judgment on this claim.

9          2. Excessive Force

10         Plaintiff also claims that defendant Barron used excessive force in bringing

11  plaintiff to the ground after plaintiff stepped away from the search for the second time.

12  Defendant Barron seeks summary judgment on the grounds that the force he used was "de

13  minimis" and that plaintiff suffered no discernible injury as a result of the use of force.  Plaintiff

14  disputes that any force was necessary under the circumstances, and he also disputes defendant

15  Barron's characterization of the injury plaintiff claims he sustained.

16         Plaintiff's excessive force claim implicates the Eighth Amendment's proscription

17  against cruel and unusual punishment.  Use of force on a prison inmate does not violate the

18  Eighth Amendment "if it applied in a good faith effort to restore discipline and order and not

19  'maliciously and sadistically for the very purpose of causing harm.'"  Clement v. Gomez, 298

20  F.3d 898, 903 (9th Cir. 2002).

21         As with plaintiff's first claim, there are factual disputes between plaintiff's

22  version of events and defendant Barron's version of events.  In particular, the parties dispute

23  whether any force was necessary at all, the amount of force used by defendant Barron, and

24  whether defendant Barron ever touched plaintiff's left wrist.  Defendant Barron presents

25  evidence that after plaintiff stepped away from the body search twice, he held plaintiff's right

26  wrist and elbow and ordered plaintiff to the ground.  According to defendant Barron, plaintiff

1   complied with that order with no resistance.  Defendant Barron also presents the declaration of

2   two correctional officers to corroborate his averment that he held plaintiff's right wrist with his

3   right hand as plaintiff got down on the ground.  See Declaration of J. Ramsey, filed March 9,

4   2011, at ¶ 5; Declaration of D. Ulbricht, filed March 9, 2011, at ¶ 5.

5              Neither party has filed all of the medical records relevant to the claim at bar.  A

6   declaration from the physician who was the Acting Chief Medical Officer at High Desert at the

7   time of the events at bar provides a summary of plaintiff's medical records from February 5,

8   2008 through completion of physical therapy following the surgery on plaintiff's left wrist.  See

9   Declaration of D. Swingle, M.D. filed March 9, 2011 (Swingle Decl.), at ¶¶ 5-17.  Defendants

10  contend that plaintiff "only complained of pain to his right wrist as documented" in the injury

11  report prepared by defendant Bryant on February 5, 2008; that injury report has lines pointing to

12  the right wrist and elbow on the human figure on the report.  See Bryant Decl. at ¶ 6 and Ex. A.

13  The medical report of injury shows that plaintiff reported pain in his wrist at a level of 7 on a

14  scale of ten, and that his wrist hurt when he bent it.  See Ex. A to Bryant Decl.  Plaintiff contends

15  that he reported pain in his left wrist on February 5, 2008 and in succeeding days, and that the

16  representation of injury to plaintiff's right wrist in the injury report represents a "clerical

17  mistake" and "negligence" by defendant Bryant.  See Plaintiff's Opposition at 2-3.  Plaintiff

18  supports this contention by arguing that if defendant Barron's testimony that he held plaintiff's

19  right wrist and elbow is true, plaintiff could not have suffered an abrasion to his right elbow

20  because his right elbow would have been protected by defendant Barron's hand on the elbow.  Id.

21  at 4.

22             There is no dispute that plaintiff was seen on February 8, 2008 and February 22,

23  2008 for pain in his left wrist, nor is there any dispute that plaintiff had surgery on his left wrist

24  approximately one month after the incident at bar.  Plaintiff has presented evidence that the

25  surgery was necessitated by the injury suffered on February 5, 2008, and defendants have

26  presented no evidence of a different etiology for the left wrist fracture.

1    Plaintiff's evidence, if believed, could support a finding defendant Barron forced

2  plaintiff to the ground with sufficient force to break plaintiff's left wrist, after plaintiff had twice

3  requested that defendant Barron stop pressing against plaintiff in a sexually intrusive manner but

4  otherwise cooperated in the clothed body search, which could support a finding that force was

5  applied in violation of the Eighth Amendment.  The disputes between the parties over the facts

6  relevant to plaintiff's claim of excessive force preclude summary judgment for defendant Barron

7  on this claim.

8    3.  Deliberate Indifference to Serious Medical Need

9    Plaintiff's third claim arising from the events of February 5, 2008 is that

10  defendants Bryant and Flaherty, both nurses at High Desert, acted with deliberate indifference to

11  plaintiff's need for adequate treatment of his wrist injury.

12    In order to prevail on his Eighth Amendment claim plaintiff must prove that he

13  had a "serious medical need" and that defendants Bryant and Flaherty acted with "deliberate

14  indifference" to that need.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  A medical need is

15  serious if "the failure to treat a prisoner's condition could result in further significant injury or

16  the 'unnecessary and wanton infliction of pain.'"  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th

17  Cir.1992) (quoting Estelle, 429 U.S. at 104).  Deliberate indifference is proved by evidence that a

18  prison official "knows of and disregards an excessive risk to inmate health or safety; the official

19  must both be aware of the facts from which the inference could be drawn that a substantial risk of

20  serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 U.S. 825, 837

21  (1994).  Mere negligence is insufficient for Eighth Amendment liability.  Frost v. Agnos, 152

22  F.3d 1124, 1128 (9th Cir. 1998).

23    "Prison officials are deliberately indifferent to a prisoner's serious medical needs

24  when they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296

25  F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).  However, delay

26  in providing medical treatment to a prisoner does not constitute deliberate indifference unless the

1  delay causes harm.  <u>Shapley v. Nevada Bd. of State Prison Com'rs</u>, 766 F.2d 404 (9th Cir. 1985).

2  "A prisoner need not show his harm was substantial; however, such would provide additional

3  support for the inmate's claim that the defendant was deliberately indifferent to his needs."  <u>Jett</u>

4  <u>v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing <u>McGuckin</u>, at 1060).

5         Defendant Bryant seeks summary judgment on this claim on the ground that there

6  is no evidence that plaintiff had a serious injury to his left wrist on February 5, 2008.  Defendant

7  Flaherty seeks summary judgment on the grounds that plaintiff's dispute with defendant

8  Flaherty's February 8, 2008 characterization of plaintiff's wrist injury as "routine" represents

9  only a difference of opinion with a medical provider, which is insufficient to support Eighth

10 Amendment liability.  Both defendants also seeks summary judgment on the ground there is no

11 evidence that any delay in medical treatment for his left wrist fracture was harmful because the

12 surgery to repair the fracture was successful.

13        Defendant Bryant's involvement in the events complained of is limited to

14 examination of plaintiff on February 5, 2008, and preparation of the injury report.  There is a

15 dispute between the parties over whether defendant Bryant prepared the injury report accurately

16 or was mistaken in documenting an injury to plaintiff's right wrist.  Even viewed in the light

17 most favorable to plaintiff, however, there is no evidence that defendant Bryant acted with

18 deliberate indifference to plaintiff's wrist injury.  Defendant Bryant is entitled to summary

19 judgment on plaintiff's Eighth Amendment claim.

20        Plaintiff claims that defendant Flaherty acted with deliberate indifference to

21 plaintiff's wrist injury when, on February 8, 2008, defendant Flaherty characterized the injury as

22 "routine" instead of having plaintiff seen by a physician that day.  Plaintiff points to undisputed

23 evidence that when he was seen again two weeks later, the nurse practitioner ordered x-rays

24 which revealed the fracture that was thereafter surgically repaired.  As noted above, however,

25 neither negligence nor medical malpractice violate the Eighth Amendment.  The facts of

26 plaintiff's claim against defendant Flaherty do not rise to the level of deliberate indifference to

1  plaintiff's need for proper treatment of his wrist injury.  Defendant Flaherty is therefore entitled

2  to summary judgment.

3  II.  Deliberate Indifference to Back Injury

4          Plaintiff also claims that defendant Bryant acted with deliberate indifference to

5  plaintiff's need for adequate treatment for a back injury that he sustained on March 24, 2008,

6  which ultimately required surgery.  Defendant Bryant seeks summary judgment on the ground

7  that there is no evidence that defendant Bryant provided inadequate care or caused unnecessary

8  delay or further injury to plaintiff.

9      A.  Facts

10          On March 24, 2008, plaintiff jumped to touch the rim of a basketball hoop.

11  Complaint at 7.  When he landed, his legs "turned to rubber and [he] started to have trouble

12  walking."  Id.  Plaintiff avers that he had severe pain shooting down his legs, which forced him to

13  the ground, and that when he "managed" to get up, he "stumble[d] to the medical clinic" and

14  informed medical staff of his condition.  Id. at 7-8.  Plaintiff was seen by defendant Bryant in the

15  medical clinic.  Id. at 8.  She checked his circulation and took his blood pressure and sent him

16  back to his living quarters.  Id.  Plaintiff avers that he submitted "numerous medical forms" over

17  the "next few months" "because the pain was constant and becoming worse."  Id.

18          Defendants present evidence that a medical progress note in plaintiff's health

19  records show that plaintiff was seen in the medical clinic at 8:40 p.m. and that the nurse noted

20  that plaintiff reported that when he landed on his feet he "'felt needle like prickling pain to [his]

21  Upper hips and inner thigh.'"  Swingle Decl. at ¶ 22.  Defendants also present evidence that

22  between April and July 2008, plaintiff was "seen and treated for pain associated with his left

23  wrist injury, without any apparent complaints concerning his back."  Id. at ¶ 23.  Plaintiff was

24  seen for back pain on August 5, September 4, and September 26, 2008.  Id. at ¶ 24.  On October

25  29, 2008, plaintiff had an MRI.  Id. at ¶ 27.  The MRI indicated a "bulging disk at L4-5 with a

26  possible tear."  Id. at ¶ 30.  On May 1, 2009, plaintiff had surgery for the bulging disk.  Id. at ¶

31.  On July 2, 2009 and July 8, 2009 plaintiff was seen for physical therapy, which was discontinued on July 8, 2009.  Id. at ¶ 33.  On August 20, 2009, plaintiff was seen for another post-operative examination and he report that his "condition was better than before he had received the . . . surgery."  Id. at ¶ 36.

Plaintiff's claim against defendant Bryant is based on the visit to the medical clinic on March 24, 2008 after plaintiff experienced pain and numbness when he landed after jumping to touch the basketball hoop rim.  The evidence of that visit is insufficient to create a triable issue of material fact as to whether defendant Bryant responded with deliberate indifference to plaintiff's complaint about his back injury.  Defendant Bryant is entitled to summary judgment on this claim.

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1.  Defendants' March 9, 2011 motion for summary judgment be denied as to plaintiff's Eighth Amendment claim of excessive force against defendant Barron and granted in all other respects; and

2.  This matter be referred back to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The

/////
/////
/////
/////
/////

1    parties are advised that failure to file objections within the specified time may waive the right to

2    appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3    DATED: January 19, 2012.

4

5                                            UNITED STATES MAGISTRATE JUDGE

6

7    12

8    jone0396.msj

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26